# SUPREME COURT.

ARTHUR C. BROWN, as executor and trustee of the last will and testament of AUGUSTUS CLEVELAND, deceased, agt. MARIA E. CLEVELAND and others.

*Will as effected by codicil thereto — Repugnancy — Construction.*

Where a testator, after giving legacies to certain persons named in his will, to the amount of $53,000, directed the rest and remainder of his estate to be invested by his executors so as to yield income, which income he gave to his wife for life, and by a final codicil, after specifically making some new provisions in favor of his wife, directed that the sum of $60,000 should be set apart from his estate and should be invested by his executors for the benefit of his wife, the testator, however, declaring, in and by the final codicil, that the provisions therein made for his wife were in addition to the provisions he had made in his will and previous " codicils " for her; and that his will and codicil, except as changed by the last codicil, were confirmed:

*Held,* that the legacies, to the amount of $53,000, given to others were not disturbed by the new provisions created in favor of his wife by the last codicil; and that the principal sum of $60,000 therein directed to be invested by his executors for the benefit of his wife must be raised from the *rest and remainder of the estate,* after the satisfaction of the legacies, although the income of this rest and remainder had been given to her by the will.

Where there is a real repugnancy between the will and a codicil thereto, then the disposition made by the latter must prevail as the latest expression of the testator. But there is no hostility between the codicil and will under consideration which prevents the construction above indicated, by which effect is given to the provisions of both will and codicil.

Where a testator, by a final codicil to his will, speaks of " a codicil *or codicils* " to his will theretofore executed, and the expression " *codicils* " is repeated in other parts of the same instrument, but no codicil is produced, other than the one last executed, and another one executed some years before, and no evidence being adduced of the fact of any other codicil having been executed:

*Held,* that it must be accepted as a fact that there were no other codicils except the two produced.

*Special Term, January,* 1879.

AUGUSTUS CLEVELAND, the testator, died in the city of
Paris, in France, on the 8th day of March, 1878.

On the 11th day of November, 1856, he made a last will
and testament by which he disposed of his estate real and
personal.

By his will, after bequeathing in legacies in favor of his
brother, sisters, the widow of a deceased brother, nephews
and others, the sum of $53,000, he gave the rest, residue and
remainder of his estate to his executors, in trust, to invest the
same in the manner directed in the will, to collect the revenue
and profits thereof and to apply the same to the use of his
widow during her life.   On her death the trust was to cease
and the estate was given to any child or children of the tes-
tator, and in the event of his death without leaving issue him
surviving, then the estate was given to the children of his
sister, Mary C. Brown, and of his brothers George and Henry
Cleveland.   The provisions in favor of his wife were made
and were to be accepted in lieu of dower.

On the 15th day of August, 1860, the testator made a codi-
cil to his will, in and by which he reduced the amount of the
legacies given in his will to certain persons and made a change
in his executors; but in all other respects he confirmed his
will.

On the 2d day of April, 1872, the testator, at the city of
Nice, in the republic of France, made a further codicil to his
will, in which he makes other changes in respect to the executors
thereof.   When this codicil was made the will was not before
the testator, but the same, with the prior codicil thereto, was
in the charge of the agent of the testator in the city of New
York.   In and by this last codicil the testator appointed his
wife an executrix of his will, "and of the several codicils
thereto," and declared that "in all other respects (except as
hereinafter changed) I hereby confirm my said will and codi-
cil (or codicils)."

The testator by this codicil declared as follows:

"Second. In addition to the provisions I have made in my

said will and codicils for my said wife, Maria E. Cleveland, and in addition to what she would by law receive under said will and codicils, I give and devise to her the income of sixty thousand dollars, from the time of my death, for and during her natural life. And I hereby authorize and direct my executors and executrix, for the purpose of raising said income, to set aside from my estate the said sum of sixty thousand dollars, and to invest the same on good bond and mortgage, or in bonds of the United States government, paying to her the interest or income of said sixty thousand dollars from my death, as aforesaid, in semi-annual payments. And in case my personal estate is not sufficient to yield said sixty thousand dollars, in addition to the other legacies and provisions of my said will and codicils, then, in that event, I hereby authorize, empower and direct my said executors and executrix, or the survivor or survivors of them, to sell my lot and store, number ninety-nine Maiden lane, in the city of New York," &c., &c. "And I hereby make said legacy a charge on all my real estate."

At the death of his wife the testator, by this codicil, gave the sum of $60,000 to certain charitable institutions named by him and then provides that "in case any of the above-named legacies are not legally payable by reason of the institutions or societies not being named or described with sufficient accuracy or otherwise, then I authorize and direct my executors to pay such legacy or legacies to such charitable institutions or societies as my said wife, Maria E. Cleveland, shall in and by her last will and testament appoint and direct, and I hereby authorize and empower her to make such appointment and direction. The testator then gave and bequeathed to his wife "in addition to the other provisions" he had made for her "in said will and codicil" all the paintings, marbles and other works of art which he had purchased in Europe, also all his silver, linen, paintings and other articles of *vertu* at Carmansville, New York, including china and porcelain, and directed that "in no event shall any portion of these

articles be sold to pay any of the legacies or expenses of my estate." He also declares that "the provisions made for my wife in this codicil to my will are in consideration of her great faithfulness and devotion to me in my long and painful illness."

At his death the testator left him surviving his widow, Maria E. Cleveland, but no child or children.

*William A. Beach*, for plaintiff.

*Lott C. Clark*, for widow.

*A. P. Capwell* and *Hamilton Odell*, for Charles A. Cleveland and George D. Cleveland and others.

*Wheeler H. Peckham*, for St. Luke's Hospital.

*William Tracy*, for Half Orphan Asylum.

*Jno. L. Sutherland* and *Stephen P. Nash*, for other societies.

VAN VORST, *J.* — In the first clause of the last codicil to his will, bearing date the 2d day of April, 1872, the testator speaks of a " codicil" (or codicils) to his will, theretofore executed. This expression " codicils " is repeated in other parts of this instrument in connection with other subjects, and notably with regard to provisions made by the testator in favor of his wife. But no codicil, other than the one bearing date the 15th day of August, 1860, and the one first abovementioned, has been produced before the surrogate for probate ; and no evidence has been adduced before me of the fact of any codicil having been executed by the testator, other than the two above mentioned. The fact that the testator had resided many years abroad, and that his will, with the first codicil, remained in New York with the custodians selected by him for safe-keeping, may have led him, in the

absence of the document, to speak of other codicils, it not being absolutely clear to his mind whether his testamentary dispositions, in addition to his will, were contained in one or more codicils, and hence, for greater caution, in alluding to the subject in his last codicil, he speaks in the alternative of a " codicil," and in brackets " [or codicils]." Whether there was one or more, he intended to confirm whatever testamentary disposition he had in that manner made, except as changed by his last codicil. In the absence of any proof upon the subject, we must accept the conclusion that there was not, in fact, any codicil executed by the testator, other than the two produced in evidence on the trial.

By the will itself, legacies out of his estate, to the amount of $53,000, were given to relatives and friends of the testator, who are named, and the residue of the estate was devised to the executors, in trust, to be invested in a manner to yield income, which income was given to the wife of the testator for life, and upon her death the principal itself was given to the children of a sister and brother of the testator, in the event that he died without leaving any child or children him surviving.

This was the only provision contained in the will in favor of the testator's wife, and was by her to be accepted in lieu of dower.

By the last codicil the testator placed his wife in a new and distinct relation to his estate. He appointed her executrix of his will. He gave her a power of appointment over a portion of his estate, which he had set apart for charitable purposes, in the event that the beneficiaries selected by him could not take. He gave her, absolutely, certain articles of personal property and works of art and *vertu*, liberated from any possibility of their being appropriated to any other charge or purpose under his will, and made a particular provision for her, during her life, out of a definite portion of his estate, which is to be set aside and properly invested to produce income for that purpose.

But the testator is careful to declare that the provisions made for his wife, in his last codicil, are in addition to the provisions he had made in his will and codicils for her, and in addition to what she would by law receive under his will and codicils, which was, in substance, what he had antecedently stated that his will and codicils, *except as changed by this last codicil,* were confirmed. Diverse views are entertained by the learned counsel engaged for the respective parties as to the construction of the will, in connection with the last codicil. One contends that the setting apart of the sum of $60,000 for the benefit of the wife for life, with a remainder over in favor of the charitable societies named in the will, is repugnant to the will by which the whole residue, after the payment of the legacies, to the amount of $53,000, was given to the trustees, to be by them invested and held for her use during her life, with remainder over to the children of his sister and brothers, and that, as the whole estate was given away by the will, which gifts were confirmed by the codicil itself, the new provision by which the income of $60,000 is given to her for life and the principal to the charitable societies after her death, and the setting aside of that sum out of his estate for those purposes, is incapable of execution as there is no property remaining undisposed of upon which the codicil in this regard can act.

Another counsel contends that the codicil, in effect, revokes the legacies of $53,000 given by the will, and that the moneys originally intended to satisfy them is to be appropriated towards the creation of the fund of $60,000 for the benefit of the testator's wife for life and the charitable societies after her death.

It is urged by the counsel representing these interests that there is such repugnancy between the provisions and gifts in the will and codicil, in these particulars, that one or the other must give way.

Such conclusion cannot be accepted, unless from a con-

sideration of the will and codicil together the provisions in both are incapable of execution.

Then, the latest disposition made by the testator must prevail, as best in harmony with his intentions (*Parks* agt. *Parks*, 9 *Paige*, 109).

The effort, however, should be to harmonize and reconcile, if possible, the provisions, apparently repugnant, and in this way effectuate the will of the testator.

In *Taggart* agt. *Murray* (53 *N. Y.*, 233) it is declared "that effect is to be given, if possible, to all the provisions of the will, and no clause is to be rejected, or interest intended to be given, sacrificed, on the ground of repugnancy, when it is possible to reconcile the provisions supposed to be in conflict." I cannot conclude that the legacies to the amount of $53,000, given by the will, are disturbed by the codicil.

There is an entire absence of any expression, proceeding from the testator, to indicate that his particular intention, with regard to the persons designated by him to receive gifts to that amount, had been changed; on the other hand the general language of the codicil, by which the will was confirmed, must be held to re-establish these gifts; and, besides, they do not amount to the sum directed to be set aside by the codicil. It is true, as is urged by the learned counsel for the widow, that the testator, in the same manner, confirms the provisions made for his wife in the will, which disposes of the residuary estate for her benefit for life after the satisfaction of these legacies. If the terms "the rest and residue of my estate" are to be regarded as an absolutely fixed and determined property and estate, given by the will to the executors, in trust, not intended to be abridged or disturbed by the codicil, then there would be no property remaining out of which the fund of $60,000 could be raised. But I do not regard the gift of the residue to his executors, for the benefit of his wife, as inflexible; I think the codicil changes the amount, although not the ultimate direction, of the "rest and residue."

The last codicil was a republication of the will, and makes

it speak from the date of the codicil, and as changed by its terms; that was clearly the intention of the testator (*Kipp* agt. *Van Cortland*, 7 *Hill*, 346; *Van Alstyne* agt. *Van Alstyne*, 28 *N. Y.*, 375). A consideration of the codicil and will together justifies the conclusion, to my mind, that the testator designed to add to the pecuniary provisions for his wife, and to devote, without prejudice to what he had done for her, a portion of his estate to charitable purposes, and to leave the gifts and legacies to his relatives in the early portion of his will intact.

It has been already seen that the testator, by this codicil, bequeaths to his wife, absolutely, certain personal property. This is a new provision in her favor.

His design, then, was that from the rest and residue of his estate should be set apart this fund of $60,000, specifically. In this regard he places this fund in the same category with the legacies already given, to be satisfied with them in the first instance out of his personal estate; but he adds " in case my personal estate is not sufficient to yield said $60,000, in addition to the other legacies and provisions," of his will and codicil " then, in that event," he authorizes and empowers his executors to sell certain real estate to raise this amount of $60,000, and, in fact, makes the security of this fund a charge upon all his real estate.

As to the rest and residue of the testator's estate, after the payment of the legacies, including the gift of the income of this fund, so to be set aside to his wife, the same is left precisely as it was disposed of by the will and is not disturbed by the codicil. Those entitled to it by the original gift will, in the end, receive it. The setting apart of this sum of $60,000 in no manner operates to the injury of the widow. It effectuates a particular intention for her advantage. It secures a safe and permanent investment for her benefit for life of this amount, and through it the testator gives effect to his benevolent intentions by devoting the principal sum to charitable objects when, through her death, it can no longer

be of service to her. The substantial change is in turning into new channels, from what was originally contemplated, the principal of this fund of $60,000. This construction, I think, is clearly in harmony with the intention of the testator. as expressed in the will and codicil.

Points have been submitted on the behalf of the Society for the Relief of Half Orphans, the Nursery and Childs' Hospital, St. Luke's Hospital and other societies. They seek to uphold the provisions of the codicil by which the fund of $60,000 was set aside by the testator for their ultimate benefit.

The construction given upholds these gifts and assures their fruition.

The gift to the Half Orphan Asylum on Tenth street, in the city of New York, was manifestly intended for "The Society for the Relief of Half Orphan and Destitute Children in the City of New York."

Judgment for the construction of the will and codicils is given in pursuance of the above views, and the form of the judgment to be prepared by the plaintiffs' attorneys will be settled on notice to the attorneys for the other parties.